IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HARTFORD LIFE AND ACCIDENT INSRUANCE CO., | )<br>)<br>) Case No. 7:21-cv-638<br>) |
| Plaintiff, | )<br>) By:   Michael F. Urbanski |
| v. | ) Chief United States District Judge<br>) |
| CHARLES HERRING, as Executor of the Estate of Alan Herring, | )<br>)<br>) |
| and | )<br>) |
| ELIZABETH A. CRANDALL f/k/a Elizabeth A Herring, | )<br>)<br>) |
| and | )<br>) |
| MADELINE ELIZABETH HAMUKA, | )<br>)<br>) |
| and | )<br>) |
| C.A.H., a minor, | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the court on defendant Elizabeth Crandall's motion for summary judgment, ECF No. 34. Defendant Charles Herring opposed the motion, ECF No. 37, to which Crandall replied, ECF No. 41. The court heard argument on this motion on July 12, 2023. For the foregoing reasons, the motion for summary judgment is **GRANTED**.

1

## I. Background

This action arises out of a dispute as to the proper beneficiary of a $302,131.64 life insurance policy ("the policy") issued by Hartford Life and Accident Insurance Company as a benefit to employees of JetBlue Airways Corporation. The policy contains a Group Basic Life Benefit and a Basic Accidental Death and Dismemberment Benefit. Alan Herring, who was an employee of JetBlue, participated in those benefits. On April 25, 2018, Alan Herring designated his then-wife, Crandall, as the beneficiary.

On February 20, 2020, Alan Herring and Crandall separated in the State of North Carolina and entered into a separation and property settlement agreement. The post-nuptial agreement contains provisions regarding property settlement, which state, in relevant part, as follows:

> Life Insurance. Husband acknowledges that he is the owner of life insurance policies with JetBlue . . . . Husband shall retain ownership of these policies, free and clear of any claim by wife, and shall be solely responsible for the premium payments that may be due thereon.

ECF No. 34-3, at 5. On March 4, 2021, the state of North Carolina entered a decree of divorce for Crandall and Alan Herring. The parties agree that the separation agreement is governed by North Carolina Law. See id. at 2; ECF No. 34, at 7 ("[I]t is a matter of [North Carolina] state contract law to determine whether there was a contractual waiver."); ECF No. 37, at 4 ("[T]his case is governed by North Carolina law.").

On May 16, 2021, Alan Herring died in an accident in the Commonwealth of Virginia. At the time of his death, the policy was in effect, and it is undisputed that at no point did Alan Herring designate anyone other than Crandall as the primary beneficiary of the policy.

After Alan Herring's death, Hartford Life Insurance received claims by Charles Herring, Alan Herring's brother and executor of his estate, for the proceeds of the policy. On December 20, 2021, Hartford brought an interpleader action for the purpose of determining whether Crandall or Alan Herring's estate are entitled to the proceeds of the policy. The court ordered Hartford to deposit the interpleader funds into the Registry of the Court. ECF No. 24. The court then discharged Hartford from all further liability to defendants and dismissed it from the action. ECF No. 36.

Crandall has filed a motion for summary judgment, arguing that the separation agreement between herself and Alan Herring does not impact her status as the beneficiary of the policy and that she is thus entitled to the proceeds of the policy. Charles Herring opposes, alleging that the language of the separation agreement indicates that the proceeds should go to Alan Herring's estate rather than to Crandall.

## II. Legal Standard

Pursuant to Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that

3

are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Anderson, 477 U.S. at 248). Even when facts are not in

4

dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

### III. Analysis

Under North Carolina state law, it is well established that

> [g]eneral expression or clauses in a property settlement agreement between a husband and wife [] are not to be construed as including an assignment or renunciation of expectancies, and a beneficiary therefore retains his status under an insurance policy if it does not clearly appear from the agreement that in addition to the segregation of the property of the spouses it was intended to deprive either spouse of the right to take under an insurance contract of the other.

Tobacco Grp. Ltd. v. Trust Co., 7 N.C. App. 202 (1970) (quoting 4 Couch on Insurance 2d § 27:114, at 655). As a general rule, "[t]he failure of [a] husband to exercise his power to change the beneficiary ordinarily indicates that he does not wish to effect such a change," but "each case must be decided upon its own facts." DeVane v. Travelers' Ins. Co., 8. N.C. App. 247, 249 (1970) (quoting Zachary v. Trust Co., 4 N.C. App. 221, 224 (1969)).

In DeVane v. Travelers' Insurance Company, 8 N.C. App. 247 (1970), a North Carolina appeals court was faced with similar facts as those in this case. Bobby DeVane designated his then-wife, Betty, to be the beneficiary of his group life and accidental death insurance plans. Id. at 249. A few years later, Betty and Bobby separated and entered into an agreement that "did not expressly refer to the aforementioned insurance benefits but provided, in part, that Betty 'relinquishes and quitclaims unto the said Bobby Knox Devane all her right, title and interest in and to the property of the said (Bobby) whether now owned or hereafter acquired by him . . . .'" Id. They then subsequently divorced. Id. After the divorce, Bobby was given

5

the opportunity to change the beneficiary, but he declined to do so. Id. Bobby then died. Id. The question before the court was whether the separation agreement and/or absolute divorce "constituted a revocation of the designation of Betty as beneficiary under the group and life insurance policy." Id. The court found that it did not. Pursuant to what the court deemed "the prevailing rule of construction," the court held that "general expression or clauses in a property settlement . . . are not to be construed as including an assignment or renunciation of expectancies" and that a beneficiary "retains his status" unless it "clearly appear[s]" from the agreement that this was contrary to the parties' intent. Id. at 250 (citing 4 Couch on Insurance 2d § 24:114, at 655) (emphasis added). Because the separation agreement did not "clearly appear" to change the beneficiary of the life insurance policy, Betty remained the proper recipient of the proceeds. Id. Bobby had the opportunity to change the beneficiary, but his failure to do so suggested he had intended that Betty remain the beneficiary. Id. (citing Imperial Tobacco Grp. Ltd. v. People's Bank & Trust, 7 N.C. 202 (1970) & Zachary v. Trust Co., 4 N.C. App. 221 (1969)).

In reaching this conclusion, the DeVane court relied on Imperial Tobacco Group Limited v. Peoples' Bank & Trust, 7 N.C. App. 202 (1970), a similar case concerning the proper beneficiary of a pension plan.[1] In that case, J.A. Taylor was enrolled in a pension plan that named this then-wife as the recipient of "benefits to widows of contributing members dying in service." Id. at 202. Taylor and his wife separated, entering into a general separation agreement that relinquished each person's interest in the other's property. Id.[2] Taylor then

---

[1] "[T]he rights of a wife as beneficiary under an insurance policy on the life of her husband are analogous to the provisions for the widow under the pension plan before us." Imperial Tobacco, 7 N.C. App. at 206.
[2] The relevant provision of the separation agreement stated that:

6

died. The court found that his former wife was still entitled to the widow's pension because "by the separation agreement each party merely contracted away all rights in the property of the 'other party.'" Id. at 205. The court explained that "by executing the agreement[,] neither of them relinquished any rights which either then had . . . under its pension plan." Id. Essentially, the beneficiary status was never the deceased's property—it was a "separate right" that had always belonged to the widow. Id. The court also explained that, assuming that Taylor had the right to change the beneficiary after the separation, "his failure to exercise it would indicate that he did not wish to effect such a change." Id.; see also Zachary v. Trust Co., 4 N.C. App. 221, 224–225 (1969) (explaining that general property settlement language "[is] not to be construed" as "an assignment or renunciation of expectancies, and a beneficiary therefore retains [her] status under an insurance policy if it does not clearly appear from the agreement" that this was the intent).

These cases instruct that the separation agreement between Alan Herring and Crandall did not impact her status as the beneficiary of the policy. While the separation agreement states that Alan Herring would retain ownership of these policy, it does not clearly indicate that the beneficiary of the policy was to change. Ownership of the policy gave Alan Herring the

---

> Each party has released and discharged, and by this agreement does for himself or herself, and his or her heirs, legal representatives, executors, administrators and assigns, release, discharge, convey and quitclaim all right, title, interest and estate, including all rights and shares provided by statute or otherwise, in and to all property, real and personal, which the other party now has, owns or has any interest in, as well as any right, title, interest or estate in any and all property, real or personal, which the other party may hereafter acquire; and, in the absence of any default in the performance of this agreement by the other party, and except as otherwise may be provided herein, each party covenants that he or she will not at any time in the future assert any such right, title, interest or estate.

Id. at 203.

7

responsibility for premium payments and the ability to make changes to the beneficiary, but he was never entitled to the proceeds. See W-Southern Life Assurance Co. v. Cropenbaker, 1:15-cv-246, 2016 WL 5030108, at *3 (S.D. Ohio Sept. 19, 2016) ("The agreement between the [ex-wife and deceased] does not specifically address the right to beneficiary expectancy; it only addresses ownership over the policy itself. This distinction is pivotal. As owner of the policy, [deceased] retained the discretion to continue the policy, cancel it, increase it, [or] change the beneficiary." (quoting Stull v. McGill, 2011 WL 4117891, at *2–*3 (Ky. Ct. App. Sept. 16, 2011)). Alan Herring did not change the beneficiary of the policy at any point before or after his separation from Crandall. Because North Carolina law requires that it must "clearly appear" that a separation agreement is intended to alter beneficiary status, and the separation agreement between Alan Herring and Crandall does not do so, the court must follow the general rule that "[t]he failure of the husband to exercise his power to change the beneficiary ordinarily indicates that he does not wish to effect such a change." DeVane, 8. N.C. App. at 249.

Both parties offer evidence outside of the language of the separation agreement in support of their arguments, including communications between Crandall and Alan Herring about changing the beneficiary status for a 401k policy, ECF No. 34-C, and alleged statements that Alan Herring made about intending his assets to care for his parents, ECF No. 37, at 8–9. However, the court cannot consider parol evidence—evidence outside of the separation agreement—to "vary, add to, or contradict a written instrument" intended to be a final integration of an agreement. Berkshire Life Ins. Co. v. Rampersad, 557 F. Supp. 3d 690, 698 (E.D.N.C. 2021) (citing Van Harris Realty, Inc. v. Coffey, 41 N.C. App. 112, 115 (1979)).

8

None of the exceptions to the parol evidence rule apply: the agreement "represents the final integration of the [] agreement;" the effective date of the agreement is not ambiguous; and nothing suggests that it is "fraud or misrepresentation." Id. at 699. Accordingly, the court cannot consider this parol evidence, and finds that North Carolina law indicates that Crandall remains the proper beneficiary of the policy proceeds.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment is **GRANTED** in its entirety and this case is **DISMISSED**. An appropriate order will be entered.

It is **SO ORDERED**.

Entered: July 19, 2023

Michael F. Urbanski
Chief United States District Judge